**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Wilfrid LAZARRE, Defendant–Appellant.**

No. 91–5524.

United States Court of Appeals, Eleventh Circuit.

Feb. 22, 1994.

Alison Marie Igoe Asst. Federal Public Defender, Miami, FL, for defendant-appellant.

Dexter W. Lehtinen, U.S. Atty., Daryl E. Trawick, Jeanne M. Mullenhoff, Linda Col-

lins Hertz, Anne M. Hayes, Miami, FL, for plaintiff-appellee.

Before HATCHETT and EDMONDSON, Circuit Judges, and FRIEDMAN,* Senior Circuit Judge.

PER CURIAM:

This case considers whether an assistant district director of the Immigration and Naturalization Service (INS) can be an official holding a "high level decision-making or sensitive position" under § 2C1.1(b)(2)(B) of the United States Sentencing Guidelines (USSG). We conclude that he can.

## I. Facts and Background

Appellant Wilfrid Lazarre is a Haitian emigre and United States citizen. Until his arrest, he was an activist for Haitian refugees, especially those at the Krome Avenue detention center (Krome) in Miami, Florida.

Lazarre was introduced to Kenneth Powers, an INS assistant district director for detention and deportation with oversight responsibility for Krome.[1] As an assistant director, Powers decided whether a Krome detainee was eligible for parole pending deportation or exclusion proceedings. If so, he decided what would be an appropriate bond.

After meetings between Lazarre and Powers on the status of certain refugees, Lazarre proposed a scheme by which both Lazarre and Powers could profit from paroling some detainees. Powers ultimately agreed.[2] The record shows that for the next five months, Lazarre paid Powers to influence the establishment of immigration bonds and the parole of Haitians at Krome. Some of these detainees were, as a matter of law, ineligible for parole, but were released anyway.

Lazarre was finally convicted of giving, offering and promising money to a public official with the intent to influence an act by the public official in violation of 18 U.S.C. § 201(b)(1)(A). At sentencing, the court found Powers was an "official holding a high level decision-making or sensitive position" and enhanced Lazarre's offense level eight points. See USSG § 2C1.1(b)(2)(B). On appeal, Lazarre argues Powers was not such an official so the enhancement was inapplicable. We disagree.

## II. Discussion

Section 2C1.1(b)(2)(B) of the USSG provides for an eight point offense level enhancement when the offense involved bribery of a high level official.[3] Application note one gives examples of officials falling under this provision. It cites "prosecuting attorneys, judges, agency administrators, supervisory law enforcement officers, and other governmental officials with similar levels of responsibility." Because Powers' level of discretion and responsibility was similar to that of a supervisory law enforcement officer or prosecuting attorney or judge, we conclude that the enhancement was proper.

In his capacity as an assistant director, Powers could parole aliens pending deportation or exclusion proceedings. And he was authorized to set bonds, which were usually required as a condition of parole, or to release a detainee on his own recognizance. He reviewed each request for parole individually. Other INS employees who also received parole requests from family members,

---

* Honorable Daniel M. Friedman, Senior U.S. Circuit Judge for the Federal Circuit, sitting by designation.

1. Powers was one of four assistant district directors working under district director Richard Smith. He was third in line behind the deputy district director. The delegation of power to parole immigrants and set bonds is as follows: the United States Attorney General has statutory authority to parole aliens under 8 U.S.C. § 1182. This authority has been delegated to the INS Commissioner, which has redelegated it to district directors. These district directors have in turn delegated the power to assistant district directors.

2. Initially, he declined. He then reported the incident to his supervisors and the Justice Department. The Department asked him to participate in the scheme to aid in their investigation of Lazarre.

3. The term "high level official" is used for brevity. It refers to an official in a "high level decision-making or sensitive position". USSG § 2C1.1(b)(2).

attorneys or the community advised Powers on the merits of some cases. But Powers had the final authority to set bond and to deny or to grant a parole request.[4]

In executing his authority, Powers was supposed to follow general parole criteria established by federal regulations and district director Smith.[5] But, in fact, he had, because of his position, the power to set people free who did not meet the appropriate standards. Unusual cases were very occasionally referred by Powers to director Smith.[6] But Powers made the final decision in most cases whether each immigrant could be paroled and what bond should be set in each alien's case. Lazarre knew that Powers was essentially the only person in a position to accomplish Lazarre's goal of getting Haitian detainees paroled—rightly or wrongly.

Powers' discretion is similar to that given a supervisory law enforcement official or a prosecuting attorney or even a judge setting bail. Each of those officials must work within certain confines. They are guided by specific policies and are restrained to a degree by rules and regulations. But these jobs involve the exercise of substantial discretion; and each enjoys sufficient autonomy to implement established guidelines and make substantive decisions based on the unique circumstances of individual cases. Application note one to section 2C1.1(b)(2)(B) says that officials given similar responsibility, such as Powers, should be considered high level officials for purposes of the enhancement.[7]

We recognize that some difficult line drawing may ultimately be necessary. As other courts have said, the ability of a public official to exercise some decision-making authority does not necessarily qualify him as a high level official or the holder of a sensitive position and trigger the enhancement. See Stephenson, 895 F.2d at 877–78. But ours is not a close case. Powers, as an assistant INS district director, exercised significant discretion to set bonds, and parole or detain immigrants in Florida. The power to grant or to deny parole is a significant and sensitive power.[8] Cf. Jean v. Nelson, 727 F.2d 957, 972 (11th Cir.1984) ("[p]arole is an act of extraordinary sovereign generosity …"). And it is sufficient to qualify him as a person occupying a sensitive position and trigger the enhancement. Cf. Harrington v. United States, 748 F.Supp. 919, 931 (D.P.R.1990) (finding an INS district director, whose discretion to grant parole visas was guided by general regulatory considerations, was immune from suit under the Federal Tort Claims Act from suit based on damages incurred when he exercised his discretion).

The district court is AFFIRMED.

---

4. Evidence at trial showed that, in this case, Powers exercised his authority by paroling Haitians whose names appeared on lists provided by Lazarre. Also, in setting bonds, he acted on information provided by Lazarre as to what a detainee's family could afford.

5. Smith testified at trial that district directors have wide authority to set specific criteria for parole within their districts. So, parole criteria may vary among districts. The power to implement this criteria has been delegated to Smith's assistants.

6. Powers testified he referred about two cases per month to Smith. He also said reviewing parole requests and setting bonds for parole takes up about fifty percent of his time.

7. The officials in the cases cited by Lazarre were not given such broad decision making authority.

See United States v. Stephenson, 895 F.2d 867, 869 (2d Cir.1990) (export licensing official with power to review license applications and request further information or clarification was not high level official); United States v. Alter, 788 F.Supp. 756 (S.D.N.Y.1992), vacated, 985 F.2d 105 (2d Cir.1993) (extortion by director at half-way house whose supervisor was eleven levels removed from highest position in Bureau of Prisons hierarchy and who could not impose major disciplinary sanctions without superior's authorization did not trigger enhancement).

8. Powers' actions for Haitians at Krome were particularly visible in Miami. At the time of trial, Powers testified 70% of the 450 detainees were Haitian. Powers also testified that because of the importance of his appearing fair to all detainees, he exercised his discretion and set lower bonds for Haitians than for other classes of immigrants because Haitians' families tended to be poor and could not afford typical bonds.